No. 2219

Second Circuit Appeal

---

W. RILEY AGERTON v. CORNELIUS FUTCH

---

(May 9, 1925, Opinion and Decree)

---

(*Syllabus by˙ the Editor.*)

1. **Louisiana Digest—Pleading—Par. 18, 23, 62.**

Where a petition states that a sum is due because petitioner was compelled to pay an amount for and on behalf of defendant on a judgment states a cause of action and the exception is overruled.

2. **Louisiana Digest—Sales—Par. 178, 259.**

Where A, in order to save land sold by B, is forced to pay a judgment due by B, A can recover the amount from B.

**3.   Louisiana Digest—Appeal—Par. 625.**
Where the judgment of the trial court on
    matters of fact is clearly correct it is
    affirmed.

Appeal from Fourth Judicial District
Court of Louisiana, Parish of Union. Hon.
S. L. Digby, Judge.

This is a suit, coupled with an attach-
ment, to collect money paid by Agerton in
order to save the land sold him by Futch.

There was judgment for plaintiff and de-
fendant appealed.

Judgment affirmed.

Elder & Everett, of Farmerville, attorneys
for plaintiff, appellee.

G. H. Holloway, of Farmerville, attorney
for defendant, appellant.

REYNOLDS, J.   This is a suit in which
the plaintiff seeks to recover judgment
for $481.00 against defendant for the
amount paid by him on a judgment due
by defendant in order to relieve land
that defendant had sold plaintiff from a
judgment due by defendant to Monroe
Grocery Company.

Defendant filed an exception of no cause
of action, which was overruled.

In answer, defendant pleaded that he
had paid the plaintiff the amount claimed
by him.

Hence, the questions presented are the
exception of no cause of action, the right
of plaintiff to the writ of attachment, and
whether or not defendant has paid plain-
tiff the amount claimed.

ON THE EXCEPTION OF NO CAUSE OF
ACTION

Plaintiff alleges in his petition that
defendant is due him the sum of $481.00;
that said indebtedness arises by reason of
petitioner being compelled to pay said
amount for and on behalf of defendant
Cornelius Futch, on a judgment rendered
in a suit entitled Monroe Grocery Com-

pany vs. Cornelius Futch et al., and that
said amount is past due and unpaid not-
withstanding amicable demand.

These allegations being taken for true
for the purposes of the trial of the excep-
tion, the exception was properly over-
ruled.

The evidence fully justified, we think,
the issuance of the writ of attachment.

Defendant admits selling his real estate
to his brother just after the attorney for
the Monroe Grocery Company wrote him
a letter relative to the Monroe Grocery
Company's claim and that the same prop-
erty was by his brother resold to him after
the judgment of Monroe Grocery Company
was settled.

Defendant also admits drawing all of
his money out of the Marion bank just
after he received the letter referred to.

All of which, taken in connection with
all the other evidence relative to defen-
dant's acts, was sufficient, we think, to
sustain the writ of attachment.

This brings us to the plea of payment
tendered by the defendant.   Defendant
swears that the amount due by him to
plaintiff was paid in a settlement between
plaintiff and defendant and that plaintiff
agreed that if defendant would turn over
to him $500.00 of the amount he was re-
ceiving on a loan from the Federal Land
Bank and would make him a mineral
deed to one-sixteenth royalty on certain
land that the plaintiff would pay the bal-
ance of the Monroe Grocery Company's
judgment amounting to $481.00 and would
accept the mineral deed in full settle-
ment for the amount plaintiff was paying
on the Monroe Grocery Company judg-
ment due by defendant.

This contention of defendant is posi-
tively denied by plaintiff, and the fact
that plaintiff had to pay on the Monroe
Grocery Company's judgment $481.00 and
that the recital in the mineral deed re-

cites $25.00 as the consideration, tends to corroborate the plaintiff.

Defendant seeks to bolster up his contention by the testimony of J. N. Millstead (pages 2 and 3):

"Q. What conversation, if any, did you have with Mr. Riley Agerton with reference to the indebtedness due him by Cornelius Futch and which he is suing for in this suit?

"A. Not much to amount to anything.

"Q. Please state what Mr. Agerton told you in this connection?

"A. Nothing much. He told me about the time he and Mr. Futch went into a settlement that him and Mr. Futch had settled, what it was I can't say."

* * * *

By the court:

"Q. What did he say was settled?

"A. Just the trouble between them was settled.

* * * *

"Q. Didn't he tell you that some time he expected to collect the rest of the money due him?

"A. I faintly recollect he did. I won't be positive."

Jewell Millstead testified, pages 11 and 12:

"Q. Will you state again what you heard Mr. Agerton say?

"A. I heard him say they had the trouble settled.

* * * *

"Q. Did you hear him say anything about whether he expected to collect the rest of the money Mr. Futch owed him or not?

"A. It seems that I have, I won't be positive."

Mr. Perkins testified, pages 11 and 12:

"Q. What conversation, if any, did you ever have with Mr. Agerton, the plaintiff, with reference to an indebtedness due him by the defendant, Mr. Futch?

"A. Mr. Agerton told me that they had settled, that he had paid part of it

and Mr. Futch paid the balance of it and that they had a settlement.

* * * *

"Q. He said he had to pay some of this himself, didn't he?

"A. Yes, sir.

"Q. Said it wasn't his debt, didn't he?

"A. He didn't tell me whether it was his debt or not. He said he had to pay off some of it and Mr. Futch paid part."

John Ballard testified, pages 13 and 14:

"Q. What, if anything, did he say about accepting the $500 in cash in full settlement?

"A. He didn't say anything.

* * * *

"Q. Please state whether or not Mr. Agerton ever instructed you to inform Mr. Futch that he would accept this proposition as full settlement for the debt?

"A. No, sir, only he was going to get his money somewhere.

* * * *

"Q. Did Mr. Agerton tell you that they were going to have their money?

"A. Yes, sir. We were sitting by the board pile.

* * * *

"Q. He insisted he was going to have his money?

"A. Yes, sir. He said he didn't owe it and it wasn't just.

* * * *

"Q. Mr. Agerton told you he wasn't going to lose this money, didn't he?

"A. He did. Mr. Futch agreed that Mr. Agerton didn't owe it and that he was out $900.00."

This testimony, taken as a whole, we think, rather corroborates the plaintiff's contention that in order to save the land sold him by defendant he was forced to pay on a judgment due by defendant to Monroe Grocery Company $481.00 and that he was in some way at some time going to collect same from Futch.

It certainly cannot be held to mean that Agerton was intending to abandon any claim he had against Futch for the recovery of the money he had to pay for him on the judgment of the Monroe Grocery Company.

The question of payment is one of fact and the learned judge who heard the evidence and observed the witnesses testify decided that the defendant had not proved his plea of payment, and we think the evidence in the case abundantly sustains the correctness of his judgment.

For these reasons the judgment appealed from is affirmed.